UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ID VENTURES, LLC,

        Plaintiff,

vs.

Case No. 17-14182
HON. GEORGE CARAM STEEH

CHUBB CUSTOM INS. CO.,

        Defendant.
_____/

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS [DOC. 3]

This is a first-party property insurance dispute in which plaintiff ID Ventures alleges that defendant Chubb Custom Insurance Company ("Chubb") breached the Commercial Property Insurance Policy it issued by failing to pay a claim for damage to the plumbing in an apartment building owned and operated by ID Ventures and covered under the subject insurance policy. Plaintiff filed its complaint in state court on November 3, 2017, asserting two causes of action, one for breach of contract and the other asking the court to declare the respective rights and obligations of the parties under the insurance policy. Defendant removed the case, invoking this court's diversity jurisdiction. The matter is before the court on defendant's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

Defendant argues that both of plaintiff's causes of actions are time-barred, along with its assertion that penalty interest should be imposed under Michigan's Uniform Trade Practices Act, M.C.L. § 500.2006. Oral argument on the motion was held April 9, 2018.

STATEMENT OF FACTS

Plaintiff owns and operates an apartment building located at 1141 Holcomb Street in Detroit, Michigan ("Subject Property"). Plaintiff obtained insurance for the Subject Property through Charles Walker & Associates ("Walker") in Southfield, Michigan. Walker procured an insurance policy with Chubb ("Subject Policy") and plaintiff made payments directly to Walker. Walker did not provide plaintiff with a policy number or the actual insurance policy. Walker is not a party to this lawsuit, but plaintiff indicates it may seek to amend to add Walker.[1]

On January 8, 2015, Detroit Water and Sewerage Department ("DWSD") repaired a water main break on Holcomb Street immediately outside the Subject Property. Before the repair, the monthly bill for water and sewer services at the Subject Property averaged $1,500 to $2,000.

---

[1] From the allegations made in the complaint it appears that plaintiff may have a claim against Charles Walker & Associates. Walker is a Michigan entity, so if it is joined as a party to this action the requisite complete diversity of citizenship would be lacking. Post-removal procedure is governed by federal statute, 28 U.S.C. § 1447(e), rather than by a motion to amend the complaint. *Mackey v. J.P. Morgan Chase Bank*, 786 F.Supp.2d 1338, 1339-40 (E.D. Mich. 2011).

Following the repair, the monthly invoice increased exponentially: on January 15, 2015, the monthly bill was for $13,380.51; on February 15, 2015, the bill was for $55,005.33; and on March 14, 2015, the bill was for $39,773.26. Plaintiff determined that the typical number of units of water consumed in a month before the repair was 100-200, with the highest amount in five years being 514 units. Since the fix done by DWSD, monthly usage was in excess of 8,000 units.

Eventually, plaintiff determined that stones, sand and other debris used by DWSD to repair the water main break had flowed into the pipes and plumbing at the Subject Property. Plaintiff alleges that it was foreseeable by DWSD that "these materials would enter and infiltrate the plumbing system of the Subject Property," constituting negligence by DWSW "and for which actions Plaintiff has sustained damages." (Complaint ¶14). In order to fix the problem, plaintiff had the plumbing cleaned out and replaced the Sloan flush valves. Plaintiff also pursued an administrative appeal of the water bills through DWSD.

Plaintiff engaged in discussions with Walker to obtain a copy of the insurance policy and to file a claim with Chubb. Plaintiff asserts that after a lengthy delay, Walker ultimately produced the policy and filed a claim which was denied. (Complaint ¶¶ 20, 21). Plaintiff does not dispute that it had a

copy of the policy on November 16, 2016. The claim is dated December 21, 2016 and it identifies the date of loss as January 8, 2015. (Property Loss Notice, attached to Complaint). A synopsis accompanying the claim describes the damages caused by the manner in which DWSW undertook to repair the water main.

The Policy contains a two-year limitations on actions provision:

D.  LEGAL ACTION AGAINST US

No one may bring a legal action against us under this Coverage Part unless:

1. There has been full compliance with all of the terms of this Coverage Part; and

2. The action is brought within 2 years after the date on which the direct physical loss or damage occurred.

The water main repair occurred on January 8, 2015. Plaintiff maintains that damage to its plumbing and water fixtures "commenced on January 8, 2015 and continued on through and including the present." (Complaint ¶ 16). Plaintiff submits a plumbing proposal for $94,360.00, dated September 20, 2016, to support its position that damage was still being done to the plumbing on that date. Plaintiff also asserts that its obligation to pay the water bill did not occur until his appeal became final on April 12, 2016.

Plaintiff filed its action against defendant on November 3, 2017 alleging breach of contract and declaratory relief. Defendant asserts that

the contractual limitations period for filing lawsuits expired on January 8, 2017. Plaintiff maintains that its lawsuit is not barred because the limitations period is tolled while its claim is being adjusted and because its damages were incurred over time and not all on January 8, 2015.

## LEGAL STANDARD

Rule 12(b)(6) allows the Court to make an assessment as to whether the plaintiff has stated a claim upon which relief may be granted. Under the Supreme Court's articulation of the Rule 12(b)(6) standard in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-56 (2007), the Court must construe the complaint in favor of the plaintiff, accept the allegations of the complaint as true, and determine whether plaintiff's factual allegations present plausible claims. "'[N]aked assertion[s]' devoid of 'further factual enhancement'" are insufficient to "state a claim to relief that is plausible on its face". *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557, 570). To survive a Rule 12(b)(6) motion to dismiss, plaintiff's pleading for relief must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014) (quoting *Twombly*, 550 U.S. at 555) (other citations omitted). Even though the complaint need not contain "detailed" factual allegations, its "factual

allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *New Albany Tractor, Inc. v. Louisville Tractor, Inc.,* 650 F.3d 1046, 1051 (6th Cir. 2011) (*citing Twombly*, 550 U.S. at 555).

ANALYSIS

The contract language in the Policy provides that commencement of the limitations period is triggered on "the date on which the direct physical loss or damages occurred." When policy language is clear, it is enforced as written. *See Rory v. Cont'l Ins. Co.*, 473 Mich. 457, 486 (2005). In interpreting a policy of insurance, the Michigan Supreme Court held that "an unambiguous contractual provision providing for a shortened period of limitations is to be enforced as written unless the provision would violate law or public policy." *Id.* at 470. Defendant contends that the date on which the damage to plaintiff occurred was January 8, 2015 when DWSD was negligent in repairing the broken water main.

I. Date of Loss

Plaintiff maintains that not all of the damage or physical loss occurred on that date, as the damage was on-going. For example, the increased flow of water which occurred as a result of the stones and debris getting into the plumbing system and allowing the plumbing fixtures to run

continuously resulted in the need for $94,000.00 worth of plumbing work to be undertaken in September of 2016.  In addition, plaintiff disputed the water bill before both DWSD and in the Wayne County Circuit Court.  Ultimately, plaintiff exhausted its appeals and became liable for paying a portion of the water bill on April 12, 2016.

The Michigan Court of Appeals interpreted the same two year limitation language found in the Subject Policy in *Thierry v. North Pointe Ins.*, 2004 WL 2873808 (Mich. App. 2004) (unpublished).  The court rejected the insureds' attempt to delay commencement of the limitations period by alleging a continuing loss or additional repair expenses.  The court held the two-year suit limitations period began to run on the date the damage began and "[t]here is no indication that any such damages occurred after [the date the insurance claim was denied]." *Id.* at *3.  The court tolled the limitations period while plaintiff's insurance claim was pending, pursuant to the Michigan Insurance Code.  *See McDonald v. Farm Bureau Ins. Co.*, 480 Mich. 191, 200-01 (2008).  In affirming a grant of summary disposition, the *Thierry* court did not include a discussion of the exact date on which the original damage occurred.  The court found that there was "no indication" that any damages occurred after the date the claim was rejected, which leaves the door open that on-going damages

were a possibility, albeit one that was not supported by evidence in that case.

At this stage of the proceedings there is not enough evidence to determine if the "direct physical loss or damage" all occurred on January 8, 2015 or if damage was on-going over an extended period of time. The court finds that plaintiff's allegations are sufficient to survive the motion to dismiss on defendant's limitations of actions argument.

II.     Statutory One Year Extension

Under Michigan statute, policies of fire insurance must contain clauses that provide a minimum of a one year extension to sue, which commences at the point the insurance company denies the claim. M.C.L. §500.2833(1)(q). Defendant argues that this section does not apply here because the Subject Policy is a surplus lines policy. Defendant is a surplus lines insurance carrier, meaning it is an unauthorized carrier eligible to write insurance policies in Michigan under the Surplus Lines Insurance Act. M.C.L. §500.1903(1)(a). Surplus lines insurance companies are only permitted to insure risks that a traditional authorized carrier will not. See M.C.L. §500.1910(1). Surplus lines carriers fill a void where there is a high degree of risk involved and traditional carriers will not insure the risk.

Policy forms issued by surplus lines carriers are exempt from the Michigan Insurance Code by M.C.L. §500.1904(2) which provides:

> Forms used by unauthorized insurers pursuant to this chapter shall not be subject to this code, except that a policy shall not contain language which misrepresents the true nature of the policy or class of policies.

Michigan courts have repeatedly held that surplus lines carriers "are free to include policy language that is otherwise inconsistent with the code so long as it does not misrepresent the true nature of the policy." *Palmer Park Square, LLC v. Scottsdale Ins. Co.*, No. 16-11536, 2017 WL 227958, *4 (E.D. Mich. January 19, 2017) (*rev'd on other grounds*), *see also Gulf Underwriters Ins. Co. v. McClain Indus., Inc.*, No. 273768, 2008 WL 3021134, *2 (Mich. Ct. App. Aug. 5, 2008) (citing M.C.L. §500.1904(2) to support holding that surplus lines carrier was not subject to the requirements of a provision of the Michigan Insurance Code).

Plaintiff contends there is an issue of fact whether it could have been insured by an authorized insurance company licensed within Michigan. Having procured the policy through Walker, plaintiff was not involved in the process and claims that without conducting discovery it does not know if the surplus lines policy was its only option. Defendant argues this is not a material issue because the policy is in fact a surplus

lines policy. Because the court denies defendant's motion to dismiss, the parties will be able to explore this issue in discovery.

III.     Judicial Tolling

Plaintiff argues that the limitations period should not start running until defendant denies liability. Plaintiff asserts that the limitations provision has not been triggered in this case because defendant has not affirmatively denied the claim. In support, plaintiff cites to a footnote in a dissenting opinion from the Michigan Supreme Court which disagrees with the majority's decision to "abolish the use of the judicial tolling doctrine". *McDonald v. Farm Bureau Ins. Co.*, 480 Mich. 191, 209 n.1 (2008). The dissent explains that judicial tolling is a doctrine that "encourages insureds to give prompt notice of their claims to their insurers", while "eliminate[ing] any incentive insurers might have to wait until the contractual limitations period expires before denying claims." *Id.* at 210. However, the majority opinion of the Michigan Supreme Court held that courts must enforce unambiguous contract provisions as they are written, and that "express [lawsuit] limitations periods in optional insurance contracts are not automatically tolled as a matter of law by filing a claim." *Id.* at 200-201. In this case, the policy language does not provide for tolling during the period when a claim is pending. Plaintiff's tolling argument is unavailing.

IV. Equitable Estoppel

Plaintiff next argues that it was not provided a copy of the Policy until November 16, 2016. This was two months *before* the two year limitations period ran. Plaintiff asserts that the equitable principles of estoppel and waiver apply such that defendant should not be allowed to hold plaintiff to the contractual two year period of limitations. Plaintiff asks the court for leave to amend its complaint to properly articulate these claims.

Waiver and estoppel are contractual defenses. "A waiver is a voluntary relinquishment of a known right." *McDonald*, 480 Mich. at 200 (citation omitted). There is no indication that Chubb voluntarily relinquished its right to enforce the two year limitation period in its contract, so waiver is not applicable in this case.

For equitable estoppel to apply, plaintiff must establish that (1) defendant's acts or representations induced plaintiff to believe that the limitations period clause would not be enforced, (2) plaintiff justifiably relied on this belief, and (3) plaintiff was prejudiced as a result of its reliance on the belief that the clause would not be enforced. *Id.* at 204–05. Plaintiff contends it did not learn of the two year limitations period until after obtaining a copy of the Subject Policy. The policy appears to have been given to plaintiff's counsel by November 15, 2016 which was prior to the

time the limitations period ended on January 8, 2017. Any delay in providing the policy to plaintiff appears to have been due to the acts or omissions of its agent, not due to any act or representation of defendant. However, discovery will be available to establish what actually happened.

The court notes that equitable estoppel and waiver are contractual doctrines in the nature of a defense to the assertion of a limitations period, as opposed to causes of action that must be pled in the complaint. Therefore, plaintiff's request to amend the complaint is denied as moot.

V. <u>Declaratory Judgment Action</u>

Plaintiff seeks an order from the court "declaring the respective rights and obligations of the parties pursuant to the Subject Policy of Insurance." (Complaint, ¶ 39). Defendant argues the declaratory judgment action is redundant of plaintiff's breach of contract action, and does not seek to guide the parties' conduct in the future, as it is required to do.

To the extent that plaintiff seeks a declaration that defendant breached its obligations under the Subject Policy by failing to pay plaintiff's claims (see Complaint ¶ 38), the declaratory judgment claim seeks to adjudicate past conduct as opposed to guiding future conduct. The Sixth Circuit has held that a declaratory judgment action is intended to clarify the legal duties for the future, rather than address alleged past harm. *See*

*Amsouth Bank v. Dale*, 386 F.3d 763, 786 (6th Cir. 2004). This is the standard in Michigan as well. An "actual controversy" under MCR 2.605(A)(1) exists only "when a declaratory judgment is necessary to guide a plaintiff's future conduct in order to preserve legal rights," *UAW v. Central Mich. Univ. Trustees*, 295 Mich. App. 486, 495 (2012), so as to enable the parties to obtain an adjudication of rights "before an actual injury occurs." *Rose v. State Farm Mut. Auto. Ins. Co.*, 274 Mich. App. 291, 294 (2006).

However, to the extent plaintiff seeks an adjudication that requires defendant to adjust plaintiff's claim (Complaint ¶¶ 24, 37), such an adjudication would guide future conduct and be an appropriate request for declaratory relief.

VI.  Penalty Interest

Plaintiff seeks penalty interest for defendant's failure to adjust and pay its claim on a timely basis. The Sixth Circuit interpreted the same limitation of action contract language and held that statutory penalty interest was a valid independent cause of action available to an insured and was not subject to the two year limitations period in the contract. *Palmer Park Square, LLC v. Scottsdale Ins. Co.*, 878 F.3d 530, 534-36 (6th Cir. 2017) ("*Palmer Park II*"). The court based its holding on the view that a claim for penalty interest was a separate and distinct claim not on the

policy itself, even though it arose from the policy. *Id.* Michigan's general six-year statute of limitations was found to govern a claim for penalty interest. MCL 600.5813. *Palmer Park II*, 878 F.3d at 539.

In this case, plaintiff seeks 12% interest under MCL 500.2006(4) due to defendant's bad faith failure to adjudicate and/or pay benefits on a timely basis pursuant to the requirements of the insurance policy. A six year statutory limitations period would apply. *Id.* Of course, if plaintiff's claim under the policy is ultimately unsuccessful, then plaintiff will have no action for penalty interest.

## CONCLUSION

For the reasons stated above, defendant's motion to dismiss is denied.

Dated: April 16, 2018

                          s/George Caram Steeh
                          GEORGE CARAM STEEH
                          UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
April 16, 2018, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk

---